

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **INDUSTRIAL MARITIME CARRIERS, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO. 03-1668 c/w 03-1908** |
| **BARWIL AGENCIES A.S., et al** | **SECTION "D" (3)** |

## ORDER AND REASONS

Before the Court is the Plaintiffs' Motion to Quash and/or for Protective Order regarding the proposed depositions of plaintiff's Turkish counsel. The defendants filed formal opposition memoranda. The matter was the subject of an oral hearing, following which the matter was submitted for determination. For the following reasons, the Motion to Quash and/or Protective Order is GRANTED.

## BACKGROUND

In the case at bar, plaintiffs, Industrial Maritime Carriers (Bahamas), Inc. ("IMB") and Intermarine Inc, ("Intermarine") seek damages from defendants, Barwil Agencies A.S., Barwil Universal Denizcilik Ve Tasimacilik and Barwil Agencies (N.A.), Inc. (referred to hereinafter as collectively as "Barwil"). Plaintiffs claim that Barwil Universal, as the local vessel husbanding agent in Turkey for M/V AMDERMA and M/V INDUSTRIAL BRIDGE, failed to notify them of lawsuits filed in Turkey and that, as a result, Barwil Universal and the related Barwil entities must indemnify them for amounts paid to Daewoo (plaintiff in the Turkish lawsuits), as well as for costs, including security and attorneys' fees.



The two Turkish lawsuits involve claims by the shipper (Daewoo) and Barwil for misdelivery of a cargo of industrial equipment to Turkey.  In the case at bar,  IMB and Intermarine contend that Barwil is liable to them for a number of breaches stemming from Barwil's actions in defense of the lawsuit in Turkey.  Below is a synopsis of the background of the underlying actions and their procedural posture.

On June 2nd, 1997, IMB entered into a carriage contract with Centrans International Corporation ("Centrans") to transport construction equipment from Masan, Korea to Derince, Turkey.  Subsequently, this construction equipment was shipped to Turkey on June 16th, 1997 aboard the M/V INDUSTRIAL BRIDGE, which was time chartered to IMB.  At the time of the original carriage contract, Barwil N.A. approached IMB's managing agent (Intermarine) to solicit business for Barwil.  Plaintiffs contend that Barwil's representative was soliciting for all of Barwil's worldwide offices (including Turkey).[1]

Shortly before the original parcel of construction equipment reached its' destination, Centrans entered into a second agreement with IMB on July 3rd, 1997 to ship another parcel to Derince, Turkey.  On July 17th, 1997 (*before the second parcel was shipped*), the first parcel arrived in Derince, Turkey.  Then on July 27th, 1997, the second parcel of construction equipment arrived aboard another IMB time-chartered vessel, M/V AMDERMA.  Both of these parcels arrived and were unloaded safely at their destination port, thereby fulfilling each parties obligations under the carriage contract.

On June 2nd, 2003, Intermarine and IMB were notified that they were parties to a lawsuit pending in the Third Commercial Court of Kadikoy, Istanbul.  Plaintiffs' notice was a copy of an

---

[1] *See Initial Complaint* [REC 1; pg 4]

2

email from Mr. Izzet Hatem, counsel appointed by Barwil. The correspondence noted that: (1) IMB and Intermarine were named as defendants in an action filed by the receivers of cargo carried aboard M/V INDUSTRIAL BRIDGE and M/V AMDERMA; (2) Barwil had been dismissed from the lawsuit since it was acting as agent only to IMB; (3) Mr. Izzet Hatem had been appointed by Barwil as counsel; and (4) IMB and Intermarine had a judgment issued against them by the Third Commercial Court of Kadikoy, Istanbul in the amount of USD $2,971,000.00 (TWO MILLION NINE HUNDRED SEVENTY ONE THOUSAND DOLLARS).

IMB and Intermarine contend that the correspondence from Hatem was their first notice of the Turkish proceedings and that Barwil, their registered agent, had not notified them of the pendency of the proceedings at any time. IMB and Intermarine further contend that they were not original parties to the Turkish lawsuit, but were added as defendants by Barwil through a petition to the court and that service was never properly effected as mandated by the terms of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").

After having received the notice of Turkish judgments, IMB and Intermarine appealed and the Turkish appellate court overturned both judgements and remanded the cases to the trial court. With regard to the case involving M/V AMDERMA, IMB and Intermarine secured the judgment by posting $4,200,000.00 USD with the Turkish court. After the appellate court overturned and remanded the case, IMB and Intermarine petitioned the court to release the security that they had already posted. The petition for release of security was denied and a hearing has been set for October 14th, 2005.

3

As aforestated, the captioned matter concerns IMB/Intermarine's claims for reimbursement and damages, including the amount of the Turkish judgment, loss of business reputation and loss of business operation.

### CONTENTIONS OF THE PARTIES

Plaintiffs contend that depositions of their Turkish counsel are unnecessary because the information is readily available through less intrusive means. Plaintiffs further assert the attorney/client privilege. Plaintiffs note that: (1) forcing opposing counsel to testify as a witness is disruptive of the adversarial process and should be avoided; (2) defendants have failed to adequately explain why the proposed depositions of plaintiffs' Turkish counsel is either necessary or proper; and (3) information regarding the procedural posture of the Turkish lawsuit is a matter of public record, easily obtainable and/or previously provided without the necessity of deposing plaintiffs' Turkish counsel.

Plaintiffs highlight the seminal case, *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which specifically noted that "the practice of forcing trial counsel to testify as a witness has ... long been discouraged."[2] Plaintiff further notes the *Shelton* court's rationale, to wit:

> Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests and depositions of lay persons and simply depose opposing counsel in an attempt to identify information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness,

---

[2] *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (*citing Hickman v. Taylor,* 329 U.S. 495, 513 (1947); *see Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir.1999); *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir.1999).

however, has long been discouraged, *see Hickman v. Taylor,* 329 U.S. 495, 513 (1947) (ut causes "the standards of the profession [to] suffer"), and recognized as disrupting the adversarial nature of our judicial system, *see id.* at 516 (Jackson, J., concurring) (Discovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed for the adversary."). Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.... Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.[3]

Plaintiffs further note that all of the procedural facts from the underlying Turkish proceedings are either in the public record or have been previously provided to counsel for the defendants. Moreover, plaintiffs note that a thorough synopsis of the etiology/procedural history of this case was provided in plaintiffs' memorandum in support of this motion to quash. Accordingly, plaintiffs' position is that taking the depositions of an entire Turkish law firm is totally unnecessary for the purpose of discerning the background relevant to this case.

For their part, defendants contend that plaintiffs' motion to quash should be denied for the following reasons, to wit: (1) Turkish counsel are not protected since they are not trial counsel in this proceeding; (2) plaintiff waived any claim of privilege by seeking indemnification in the captioned cause; and (3) there is no other source for the information sought.

Defendants counter that the case of *Anserphone of New Orleans v. Protocol Communications,* 2002 WL 31016572 (E. D. La.) (Shushan, M. J.) is directly on point. Defendants highlight that, in *Anserphone,* the court limited the application of *Shelton* to the narrow parameters of that case, *i.e.,* "opposing counsel" means "the in-house attorney [as]

_____

[3]*Shelton,* 805 F.2d at 1327.

5

described in *Shelton*."[4]   Because the attorney to be deposed in the *Answerphone* case gained information through the negotiation and drafting of an agreement – *i.e.*, information gleaned by defense counsel (Vaughan) outside of his role of providing advice to his client in the context of the litigation, – the court determined that Vaughan's position was not that of "opposing counsel" and that *Shelton* was inapplicable.[5]

Citing *Anserphone* as authority, defendants contend that plaintiffs' counsel in the Turkish proceedings do not qualify as "opposing counsel" in the instant federal proceeding and that the *Shelton* analysis is inapplicable.  Additionally, defendants contend that if any privilege exists, it has been waived by the filing of this suit seeking indemnification.

Notwithstanding the fact that plaintiffs have provided information detailing the procedural background of the underlying Turkish lawsuits, defendants maintain that the deposition of plaintiffs' Turkish counsel is necessary to test the veracity of the information previously provided.  Defendants submit that they have reason to question the information that has been provided and that the only means they have of sufficiently preparing a defense in this case is by deposing plaintiffs' counsel in the Turkish litigation.   The defendants contend that they cannot rely on possibly inaccurate information and that the only reasonable method of discerning the truth is v*ia* deposition of plaintiffs' Turkish counselors,  the Ersoy Law Office.

---

[4]*Anserphone of New Orleans v. Protocol Communications,* 2002 WL 31016572 * 2 (E. D. La.).

[5]*Anserphone,* 2002 WL 31016572 ** 2-3 (E. D. La.).

## ANALYSIS

To obtain the protective order sought under Rule 26(c), it is necessary for IMB/Intermarine to show "good cause" for their request to quash the noticed deposition of their Turkish counsel.  "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[6]

Having considered the record in its entirety, the applicable law and counsel's argument, it is this Court's opinion that the notice at issue in this case seeks the deposition of "opposing counsel" within the meaning of *Shelton, supra.*   Barwil's argument that IMB/Intermarine's Turkish counsel are not trial counsel and/or opposing counsel is *facile.*  Defendants' argument ignores the fact that the Ersoy Law Office in Istanbul was retained by IMB and Intermarine to serve as plaintiffs' counsel in Turkey after the trial court rendered judgments in the M/V INDUSTRIAL BRIDGE and M/V AMDERMA lawsuits and that members of that law firm have subsequently served as advocates for the IMB and Intermarine during the Turkish appellate proceedings.

Plaintiffs' Turkish counselors are readily distinguishable from counsel (Vaughan) in the *Answerphone* case.  They are not fact witnesses as was Vaughan .  Turkish counsel have served and continue to serve as advocates in the Turkish litigation.  The *Anserphone* court permitted the deposition of Vaughan because (1) he was not representing the defendant in the pending breach

---

[6]*In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir.1998) (internal quotation marks omitted).

of contract action and (2) he was a fact witness regarding the negotiation and formation of the

contract at issue.   Counsel's deposition testimony was so limited to the facts.

Turning to the case at bar,  one cannot ignore the fact that the defendants actively seek

dismissal of this case on the basis that the Turkish courts constitute the more convenient forum.

The upshot is that, clearly, the defendants seek to depose "opposing counsel" within the meaning

of *Shelton, supra.*  Therefore, the three-part analysis set forth in *Shelton* is applicable to this case,

wherein defendants seek to depose IMB and Intermarine's Turkish counselors.

This Court recognizes that there is no blanket immunity that exempts attorneys from

being deposed.[7]  However, applying the *Shelton* factors,[8] it appears that the proposed deposition

of "opposing counsel" is unnecessary.   Work-product and/or protected legal advice aside, the

factual and procedural history of the Turkish litigation is equally accessible to defendants.

Barwil is no stranger to the Turkish litigation; it is not disputed that Barwil was represented as a

party to the Turkish litigation.  Barwil's appointed counsel apparently successfully defended

against Daewoo's claims and, thereafter, multi-million dollar judgments issued against IMB and

Intermarine by the Turkish trial court.  Now, on remand,  the Turkish trial court refuses to release

security posted in the amount of $4.2 million on the grounds that the $2.9 million judgment in

the AMDERMA lawsuit remains valid and enforceable.

The undersigned Magistrate Judge further finds the defendants arguments regarding

waiver without merit.  Barwil's reliance on the cases of *Pamida, Inc. v. E. S. Originals,* 281 F.3d

---

[7]*See Federal Trade Commission v. U. S. Grant Resources, LLC,* 2004 WL 1444951 * 8
(E. D. La. June 25, 2005) (Knowles, M.J.).

[8]*Shelton v. American Motors Corp.,* 805 F.2d at 1327.

8

726(8th Cir. 2002) and *Conoco, Inc. v. Boh Brothers Construction Co.,* 191 F.R.D. 107 (W. D.

La. 1998) is misplaced.  In both *Pamida* and *Conoco, supra,* the defendants, E. S. Originals and

Boh Bros., respectively, were not parties to the underlying lawsuits.  In the case at bar, Barwil

was a party to the underlying Turkish litigation, which is the centerpiece of IMB/Intermarine's

claims.   Additionally, unlike *Pamida* and *Conoco, supra*, there is no *pre*judgment settlement at

issue in the underlying proceedings.  It is not disputed that both of the Turkish lawsuits

proceeded to trial and judgments were issued by the Turkish trial court.   Barwil is flush with the

facts of the underlying Turkish litigation that give rise to the instant claim for indemnity.  Barwil

was not only a party to the underlying litigation, but has been kept abreast of *post*-judgment

negotiations by and between Daewoo and IMB /Intermarine.   In this regard, plaintiffs aptly note

that "[o]ne is therefore hard-pressed to determine exactly what information allegedly sought by

Barwil Universal could not be obtained from its own counsel."[9]

       Clearly, IMB/Intermarine's Turkish counselors are not the only source of the information

presently sought by the defendants.  In addition to the information previously provided by the

plaintiffs, a Rule 30(b)(6) deposition of the plaintiffs will likely yield the balance of the factual

information sought regarding the reasonableness of any *post*-judgment settlement between

Daewoo and IMB/Intermarine.  The Court here notes that plaintiffs have agreed to produce a

representative to testify regarding the decision to settle AMDERMA case for less than the face

value of the$2.9 million judgment and about any uncertainties noted regarding the $4.2 million

security posted in Turkish litigation.[10]

---

[9]*See* IMB/Intermarine's Reply Memorandum, at p. 6.

[10]*See* Plaintiffs' Reply Memorandum  at p. 7.

For all of the foregoing reasons, this Court is of the opinion that the plaintiffs have made the requisite showing (good cause) with respect to their Motion to Quash and for Protective Order regarding the deposition of plaintiffs' Turkish counselors.   The federal courts disfavor depositions of a party's attorney and allow them only in limited circumstances.   As previously explained, this case does not present those limited circumstances.   Plaintiffs have established that the Ersoy Law Office has acted only as counsel and not as principal in this matter, its Turkish counselors are "opposing counsel" within the meaning of *Shelton* and that the information sought is available from other sources.   Indeed, plaintiffs have agreed to produce a representative to testify regarding the areas at issue in this case.   Insofar as the defendants seek legal assistance, they may resort to their own retained counsel in Istanbul, Turkey, who represent them in the underlying Turkish litigation.

**IT IS ORDERED** that Plaintiff's Motion to Quash and/or for Protective Order in connection with the proposed depositions of plaintiff's Turkish counsel is GRANTED.

New Orleans, Louisiana, this  22nd day August, 2005.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**